1

2

3

4

5

6

7

8                         **UNITED STATES DISTRICT COURT**

9        **EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

10

11   SEABOARD INTERNATIONAL,              CASE NO. 1:13-CV-00281-MLH-
     INC.,                               SKO
12
                   Plaintiff-Counterdefendant,   **ORDER GRANTING IN PART**
13        vs.                            **AND DENYING IN PART**
                                         **PLAINTIFF'S MOTION TO**
14                                       **DISMISS COUNTERCLAIMS**
                                         **AND STRIKE AFFIRMATIVE**
15   CAMERON INTERNATIONAL               **DEFENSES**
     CORP.,
16                                       [Doc. No. 37]
                   Defendant-Counterclaimant.
17

18        On June 20, 2013, Plaintiff-Counterdefendant Seaboard International, Inc.

19   ("Seaboard") filed a partial motion to dismiss Defendant-Counterclaimant Cameron

20   International Corp. ("Cameron")'s counterclaims and to strike Cameron's affirmative

21   defenses. (Doc. Nos. 37-38.) On July 8, 2013, Cameron filed its opposition. (Doc. No.

22   41.) On July 15, 2013, Seaboard filed its reply.  (Doc. No. 42.)  On July 26, 2013, the

23   Court held a telephonic hearing on the matter.  Laura Wytsma appeared for Seaboard.

24   Charles Rogers and Joe Redden appeared for Cameron.  For the reasons below, the

25   Court grants in part and denies in part Seaboard's motion.

26   ///

27   ///

28

                                    - 1 -                          1:13-cv00281

1

**Background**

2      On February 26, 2013, Seaboard filed a complaint against Cameron, alleging

3 infringement of U.S. Patent No. 8,333,237 (the '237 Patent). (Doc. No. 1.) The '237

4 Patent entitled "Wellhead Isolation Tool and Wellhead Assembly Incorporating the

5 Same" was issued on December 18, 2012 and "relates to wellhead equipment, and to

6 a wellhead tool for isolating wellhead equipment from the extreme pressures and

7 abrasive materials used in oil and gas well stimulation and to a method of using the

8 same." (Id. Ex. 1.)

9      On April 9, 2013, Cameron filed an answer and counterclaims to Seaboard's

10 complaint. (Doc. No. 17.) On May 3, 2013, Seaboard filed a motion to dismiss

11 Seaboard's counterclaims and to strike Cameron's defenses. (Doc. No. 22.) On May

12 27, 2013, Cameron filed a first amended answer as a matter of course pursuant to

13 Federal Rule of Civil Procedure 15(a)(1)(B). (Doc. No. 28.) On May 29, 2013, the

14 Court denied Seaboard's motion to dismiss and to strike as moot in light of Cameron's

15 amended answer and counterclaims. (Doc. No. 30.)

16      By the present motion, Seaboard moves to dismiss and strike (1) Cameron's

17 patent misuse counterclaim and affirmative defense; (2) Cameron's prosecution laches

18 counterclaim and affirmative defense; (3) Cameron's inequitable conduct counterclaim

19 and affirmative defense to the extent it is based on the non-disclosure of material

20 information and the burying of material information; (4) Cameron's equitable estoppel

21 affirmative defense; and (5) Cameron's declaratory judgment counterclaim to declare

22 six other Seaboard patents unenforceable due to inequitable conduct. (Doc. No. 38.)

**Discussion**

23

24 **I.**    **Legal Standards for a Rule 12(b)(6) Motion to Dismiss**

25      A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the

26 pleadings and allows a court to dismiss a claim or counterclaim upon a finding that the

27 plaintiff has failed to state a claim upon which relief may be granted. See Navarro v.

28 Block, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a)(2)

1   requires that a pleading stating a claim for relief contain "a short and plain statement of

2   the claim showing that the pleader is entitled to relief."  The function of this pleading

3   requirement is to "give the defendant fair notice of what the . . . claim is and the

4   grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

5        The court may dismiss a claim as a matter of law for: (1) "lack of cognizable

6   legal theory," or (2) "insufficient facts under a cognizable legal claim." SmileCare

7   Dental Grp. v. Delta Dental Plan of Cal., 88 F.3d 780, 783 (9th Cir. 1996) (citation

8   omitted).  However, a claim survives a motion to dismiss if it contains "enough facts

9   to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

10   Nevertheless, the reviewing court need not accept "legal conclusions" as true. Ashcroft

11   v. Iqbal, 556 U.S. 662, 678 (2009).  "Factual allegations must be enough to raise a right

12   to relief above the speculative level." Twombly, 550 U.S. at 555.  It is also improper

13   for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged."

14   Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S.

15   519, 526 (1983).  On the other hand, "[w]hen there are well-pleaded factual allegations,

16   a court should assume their veracity and then determine whether they plausibly give rise

17   to an entitlement to relief." Iqbal, 556 U.S. at 679.  In deciding a motion to dismiss, the

18   court only reviews the contents of the complaint, accepting all factual allegations as

19   true, and drawing all reasonable inferences in favor of the nonmoving party. al-Kidd

20   v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009) (citations omitted).

21   **II.    Legal Standards for a Rule 12(f) Motion to Strike**

22        Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading

23   an insufficient defense or any redundant, immaterial, impertinent, or scandalous

24   matter."  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time

25   and money that must arise from litigating spurious issues by dispensing with those

26   issues prior to trial." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.

27   1983).  "Motions to strike are generally regarded with disfavor because of the limited

28   importance of pleading in federal practice, and because they are often used as a delaying

1  tactic." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1152 (C.D. Cal.

2  2003); accord Kohler v. Islands Rests., LP, 280 F.R.D. 560, 563-64 (S.D. Cal. 2012).

3  In determining a motion to strike, the court must view the pleadings in the light most

4  favorable to the non-moving party. See Wailua Assocs. v. Aetna Cas. & Sur. Co., 183

5  F.R.D. 550, 554 (D. Haw. 1998).

6       "The key to determining the sufficiency of pleading an affirmative defense is

7  whether it gives the plaintiff fair notice of the defense." Wyshak, 607 F.2d at 827

8  (citing Conley v. Gibson, 355 U.S. 41, 47-48 (1957)); accord Simmons v. Navajo, 609

9  F.3d 1011, 1023 (9th Cir. 2010). "Fair notice generally requires that the defendant state

10  the nature and grounds for the affirmative defense. It does not, however, require a

11  detailed statement of facts." Kohler, 280 F.R.D. at 564 (citing Conley, 355 U.S. at 47).

12  "[A]n affirmative defense is legally insufficient only if it clearly lacks merit 'under any

13  set of facts the defendant might allege.'" Id. (quoting McArdle v. AT&T Mobility,

14  LLC, 657 F. Supp. 2d 1140, 1149-50 (N.D. Cal. 2009)).

15  **III.    Cameron's Counterclaims and Affirmative Defenses**

16       A.    Patent Misuse

17       Cameron asserts as an affirmative defense and counterclaim that the '237 Patent

18  is unenforceable due to patent misuse. (Doc. No. 28 at 5-6 ¶¶ 22-24, at 16-17 ¶¶

19  12-15.) Seaboard argues that this counterclaim should be dismissed and the defense

20  stricken because Cameron does not allege a cognizable theory of patent misuse or that

21  the alleged misuse has resulted in anticompetitive effects. (Doc. No. 38 at 2-5.)

22       "[T]he patent misuse doctrine is an extension of the equitable doctrine of unclean

23  hands, whereby a court of equity will not lend its support to enforcement of a patent that

24  has been misused." B. Braun Med., Inc. v. Abbott Labs., 124 F.3d 1419, 1427 (Fed.

25  Cir. 1997). To establish the affirmative defense of patent misuse, a defendant must

26  prove that the patentee impermissibly broadened the physical or temporal scope of the

27  patent grant and has done so in a manner that has anticompetitive effects. Princo, 616

28  F.3d at 1328. The doctrine of patent misuse is grounded in the policy-based desire to

1    prevent a patentee from using the patent to obtain market benefit beyond that which

2    inheres in the statutory patent right. Id. at 1328; see also id. at 1331 ("[P]atent misuse

3    is about, in short, is 'patent leverage,' i.e., the use of the patent power to impose

4    overbroad conditions on the use of the patent in suit that are 'not within the reach of the

5    monopoly granted by the Government.'").

6        Cameron alleges that Seaboard is wrongfully asserting the '237 Patent against

7    Cameron's "single load path" products despite Seaboard's predecessor Duhn Oil

8    previously disclaiming that subject matter during the prosecution of the '925 Patent and

9    the '925 patent litigation.[1]   (Doc. No. 28 at 5-6 ¶¶ 22-24, at 16-17 ¶¶ 12-15.  But,

10   Cameron has failed to sufficiently allege that Seaboard's actions have had

11   anticompetitive effects.  Cameron alleges that Seaboard's actions could cause Cameron

12   to remove its products from the market.  (Doc. No. 28 at 7 ¶ 27, at 18 ¶ 18; see also

13   Doc. No. 41 at 9.)  But, an allegation of injury to a single individual or individual firm

14   is insufficient to plead an anticompetive injury.  See McGlinchy v. Shell Chemical Co.,

15   845 F.2d 802, 812 (9th Cir. 1988) ("It is injury to the market or to competition in

16   general, not merely injury to individuals or individual firms that is significant.").  In

17   addition, the injury alleged by Cameron is too speculative as Cameron only alleges that

18   it might have to remove its products from the market.  See Broadcom Corp. v.

19   Qualcomm Inc., 501 F.3d 297, 321 (3d Cir. 2007) ("The prospective harm to

20   competition must not . . . be speculative."); see also City of Los Angeles v. Lyons, 461

21   U.S. 95, 101-02 (1983) (explaining that an injury or threat of injury must be real and

22   immediate, not conjectural or hypothetical).   Accordingly, the Court dismisses

23   Cameron's counterclaim for patent misuse and strikes the related affirmative defense.[2]

24

25       [1] The '925 Patent refers to U.S. Patent No. 6,920,925, which is a parent patent to
26   the '237 Patent.  The '925 patent litigation refers to Duhn Oil v. Cooper Cameron
     Corp., Case No. 1:05-cv-1411 (E.D. Cal. filed Nov. 9, 2005).

27       [2] Because the Court dismisses Cameron's patent misuse counterclaim for failure
28   to properly plead an anticompetitive injury, the Court declines to address whether the
     claim is barred by the Noerr-Pennington doctrine.

1

##### B.     Prosecution Laches

2      Cameron asserts as an affirmative defense and counterclaim that the '237 Patent

3  is unenforceable due to prosecution laches.  (Doc. No. 28 at 6-7 ¶¶ 25-28, at 17-19 ¶¶

4  16-19.)  Seaboard argues that this counterclaim should be dismissed and the defense

5  stricken because Cameron fails to allege sufficient facts to support a prosecution laches

6  defense.[3]  (Doc. No. 38 at 5-6.)

7      "Prosecution laches is an equitable defense to a charge of patent infringement.

8  The doctrine 'may render a patent unenforceable when it has issued only after an

9  unreasonable and unexplained delay in prosecution' that constitutes an egregious

10 misuse of the statutory patent system under the totality of the circumstances."  Cancer

11 Research Tech. Ltd. v. Barr Labs., Inc., 625 F.3d 724, 728 (Fed. Cir. 2010).  The

12 requirement of an unreasonable and unexplained delay also requires a finding of

13 prejudice.  Id. at 729.  "[T]o establish prejudice an accused infringer must show

14 evidence of intervening rights, i.e., that either the accused infringer or others invested

15 in, worked on, or used the claimed technology during the period of delay."  Id.

16     Cameron alleges that Seaboard's predecessor Duhn Oil unreasonably delayed the

17 prosecution of the '237 patent claim for over six and a half years from the date when

18 it first disclaimed the "single load path" design during the prosecution of the parent

19

20

21

22

23     [3] Cameron argues that Seaboard cannot move to dismiss its counterclaim for prosecution laches under Federal Rule of Civil Procedure 12(g)(2) because Seaboard did not move to dismiss this counterclaim through its first motion to dismiss. (Doc. No.

24 41 at 1, 3.) Rule 12(g)(2) provides: "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was

25 available to the party but omitted from its earlier motion."  But, even assuming Seaboard's arguments technically violate Rule 12(g)(2), Seaboard can move to dismiss

26 the counterclaim under Rule 12(c) and the Court can consider the arguments now in order to expedite a final disposition on the issue. See Davidson v. Countrywide Home

27 Loans, Inc., 2011 U.S. Dist. LEXIS 33404, at *13 (S.D. Cal. Mar. 29, 2011); In re Wash. Mut., Inc., Securities, Derivative & ERISA Litig., 2010 U.S. Dist. LEXIS

28 119931, at *29 (W.D. Wash. Nov. 3, 2010).

1   '925 patent application.[4]  (Doc. No. 28 at 6-7 ¶¶ 25-26, at 17-18 ¶¶ 16-17.)  In addition,

2   Cameron alleges that it has been prejudiced by the delay because during that time it has

3   continued to manufacture and market "single load path" products, but if it had known

4   of the '237 Patent's claims sooner, it would have shifted to a different design.  (Id. at

5   7 ¶ 27, at 18 ¶ 18.)  These allegations are sufficient to state a claim for prosecution

6   laches.  See Cancer Research Tech., 625 F.3d at 728-29.  Accordingly, the Court denies

7   Seaboard's motion to dismiss Cameron's prosecution laches counterclaim and to strike

8   the related affirmative defense.

9        C.    Inequitable Conduct

10       Cameron asserts as an affirmative defense and counterclaim that the '237 Patent

11  is unenforceable due to inequitable conduct.  (Doc. No. 28 at 8-10 ¶¶ 30-34, at 19-22

12  ¶¶ 21-26.)  Seaboard argues that this counterclaim should be dismissed and the defense

13  stricken to the extent Cameron is relying on the non-disclosure of material information

14  and the burying of material information as a basis for its claim of inequitable conduct.

15  (Doc. No. 38 at 9-13.)

16       "Inequitable conduct is an equitable defense to patent infringement that, if

17  proved, bars enforcement of a patent."  Therasense, Inc. v. Becton, Dickinson & Co.,

18  649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc).  A finding of inequitable conduct can

19  bar enforcement of an entire family of related patents.  Id. at 1288-89 ("[T]he taint of

20

21       [4] Seaboard argues Cameron's allegations are insufficient to allege a delay because
the relevant inquiry is not whether the patentee unreasonably delayed in filing specific

22  claims in a patent application, but whether the patentee unreasonable delayed
prosecution once the claim was filed.  (Doc. No. 42 at 7-8 (citing Novo Nordisk
Pharms., Inc. v. Bio-Technology Gen. Corp., 2004 U.S. Dist. LEXIS 14960, at *100-01

23  (D. Del. Aug. 3, 2004); Intuitive Surgical, Inc. v. Computer Motion, Inc., 2002 U.S.
Dist. LEXIS 24808, at *17 (D. Del. Dec. 10, 2002).)  Seaboard argues, therefore, that

24  the fact that it did not file claims directed to a single load path system in a parent
application cannot constitute prosecution laches.  (Id. at 8.)  But, the two district court

25  cases relied on by Seaboard where issued prior to the Federal Circuit's decision in
Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., LP, 422 F.3d 1378

26  (Fed. Cir. 2005).  In Symbol Techs., the Federal Circuit explained that in evaluating a
claim of prosecution laches, the court should consider "the totality of the circumstances,

27  including the prosecution history of all of a series of related patents and overall delay
in issuing claims . . . ."  Id. at 1386.  Therefore, Cameron's allegations of delay are

28  sufficient at this stage of the litigation.

1    a finding of inequitable conduct can spread from a single patent to render unenforceable

2    other related patents and applications in the same technology family.").

3        To prevail on a claim of inequitable conduct, the accused infringer must prove

4    by clear and convincing evidence that the patentee acted with the specific intent to

5    deceive the United States Patent and Trademark Office ("PTO"). <u>Therasense</u>, 649 F.3d

6    at 1290.  The accused infringer must prove that the applicant knew of a reference, knew

7    it was material to prosecution of the patent at issue, and made a deliberate decision to

8    withhold the reference.  <u>Id.</u>  Inequitable conduct requires both materiality and intent to

9    deceive.  <u>See id.</u> at 1287.  The Federal Circuit has explained that these are separate

10   requirements, and "a district court may not infer intent solely from materiality."  <u>Id.</u> at

11   1290.

12       To prove intent to deceive, an accused infringer may rely on indirect and

13   circumstantial evidence.  <u>Id.</u>  However, the specific intent to deceive "must be 'the

14   single most reasonable inference able to be drawn from the evidence.'"  <u>Id.</u>  "Indeed,

15   the evidence 'must be sufficient to require a finding of deceitful intent in the light of all

16   the circumstances.'"  <u>Id.</u>  To meet the standard for materiality, the reference must be

17   "but-for material."  <u>Id.</u> at 1291.  A prior art reference is but-for material "if the PTO

18   would not have allowed a claim had it been aware of the undisclosed prior art."  <u>Id.</u>

19       An inequitable conduct counterclaim must be pled with "particularity" under

20   Federal Rule of Civil Procedure 9(b).  <u>Exergen Corp. v. Wal-Mart Stores, Inc.</u>, 575 F.3d

21   1312, 1326 (Fed. Cir. 2009).  Therefore, an inequitable conduct counterclaim must set

22   forth the particularized factual bases for the allegations.  <u>Id.</u> at 1327.  Specifically, the

23   counterclaim "must identify the specific who, what, when, where, and how of the

24   material misrepresentation of omission committed before the PTO."  <u>Id.</u> at 1328.

25        Moreover, although "knowledge" and "intent" may be averred generally,
     a pleading of inequitable conduct under Rule 9(b) must include sufficient
26        allegations of underlying facts from which a court may reasonably infer
     that a specific individual (1) knew of the withheld material information or
27        of the falsity of the material misrepresentation, and (2) withheld or
     misrepresented this information with a specific intent to deceive the PTO.

28

1  Id. at 1328-29.  "A reasonable inference is one that is plausible and that flows logically

2  from the facts alleged, including any objective indications of candor and good faith."

3  Id. at 1329 n.5.

4  Cameron first alleges inequitable conduct based on the alleged non-disclosure of

5  material information.  (Doc. No. 28 at 8 ¶ 30, at 19 ¶ 21.)  Cameron alleges:

6  "Specifically, on information and belief, the Applicants failed to disclose information

7  material to the patentability of the claims in the '237 patent, including material prior art,

8  during the prosecution of the applications that led to the issuance of the '237 patent, and

9  buried material prior art and material litigation information in the papers that were

10  disclosed in the final continuation application that issued as the '237 patent."  (Id.)

11  These vague allegations fall well short of satisfying Rule 9(b)'s heightened pleading

12  standard.  See Exergen, 575 F.3d at 1328-30.  The allegations do not identify "what"

13  specific prior art or litigation information was not disclosed to the PTO; "where" the

14  material information can be found within the references; "who" knew it was material

15  and failed to disclose it; and "how" the non-disclosed information was material.

16  Accordingly, the Court dismisses Cameron's inequitable conduct counterclaim and

17  strikes the related defense to the extent it is based on the alleged non-disclosure of

18  material information to the PTO.

19  Cameron also alleges inequitable conduct based on the alleged burying of

20  material prior art and material litigation information in the papers that were submitted

21  to the PTO.  (Doc. No. 28 at 9 ¶ 31, at 20 ¶ 22.)  Seaboard argues that the alleged

22  burying of references cannot constitute inequitable conduct.  (Doc. No. 38 at 10-11.)

23  In response, Cameron argues that the alleged burying of material prior art within

24  hundreds of thousands of pages of patents and litigation papers that were submitted to

25  the PTO can constitute inequitable conduct, citing Molins Plc v. Textron, Inc., 48 F.3d

26  1172 (Fed. Cir. 1995).  (Doc. No. 41 at 11-12.)  In Molins, the Federal Circuit noted

27  that "'burying' a particularly material reference in a prior art statement containing a

28  multiplicity of other references can be probative of bad faith."  48 F.3d at 1184.  But,

1  in a later case, the Federal Circuit held that "[a]n applicant can not be guilty of

2  inequitable conduct if the reference was cited to the examiner, whether or not it was a

3  ground of rejection by the examiner." Fiskars, Inc. v. Hunt Mfg. Co., 221 F.3d 1318,

4  1327 (Fed. Cir. 2000); see also Scripps Clinic & Research Foundation v. Genentech,

5  Inc., 927 F.2d 1565, 1582 (Fed. Cir. 1991) ("When a reference was before the

6  examiner, whether through the examiner's search or the applicant's disclosure, it can

7  not be deemed to have been withheld from the examiner.").

8       In light of these cases, several district courts have held that the alleged burying

9  of material information in a long list of citations to the PTO by itself is insufficient to

10 state a claim for inequitable conduct. See, e.g., Parkervision, Inc. v. Qualcomm Inc.,

11 2013 U.S. Dist. LEXIS 8467, at *9-10 (M.D. Fla. Jan. 22, 2013); Semiconductor

12 Energy Lab. Co. v. Samsung Elecs. Co., 749 F. Supp. 2d 892, 903 (W.D. Wis. 2010);

13 Symbol Techs., Inc. v. Aruba Networks, Inc., 609 F. Supp. 2d 353, 358 (D. Del. 2009).

14 The Court agrees with those decisions. Because Cameron alleges that the disclosure of

15 the references was improperly simply because the references were allegedly buried in

16 the hundreds of thousand of pages of patents and litigation papers that were submitted

17 to the PTO, Cameron fails to state a claim for inequitable conduct. See Fiskar, 221 F.3d

18 at 1327; Parkervision, 2013 U.S. Dist. LEXIS 8467, at *9-10; Semiconductor Energy

19 Lab., 749 F. Supp. 2d at 903; Symbol Techs., 609 F. Supp. 2d at 358.

20      In addition, Cameron's "burying" inequitable conduct counterclaim and

21 affirmative defense fails to satisfy Rule 9(b)'s pleading standards. Although Cameron

22 alleges "what" three specific references were allegedly buried, Cameron fails to allege

23 "who" buried them and "why/how" the references are material. See Exergen, 575 F.3d

24 at 1329-30 (explaining what must be alleged to satisfy the "who," "why," and "how"

25 requirements of Rule 9(b)). Accordingly, the Court dismisses Cameron's inequitable

26 conduct counterclaim and strikes the related defense to the extent it is based on

27

28

1    Seaboard's alleged burying of material information.[5]

2        D.    Equitable Estoppel

3        Cameron asserts as an affirmative defense that Seaboard's claims are barred, in

4    whole or in part, by the doctrine of equitable estoppel.  (Doc. No. 28 at 11 ¶ 37.)

5    Seaboard argues that this defense should be stricken because Cameron fails to plead this

6    defense with sufficient particularity to satisfy Rule 9(b) and because Cameron cannot

7    and does not allege knowledge of the '237 Patent.  (Doc. No. 38 at 7-9.)

8        To prove the affirmative defense of equitable estoppel, a defendant must show:

9    "(1) the patentee, through misleading conduct, led the alleged infringer to reasonably

10   believe that the patentee did not intend to enforce its patent against the infringer; (2) the

11   alleged infringer relied on that conduct; and (3) due to its reliance, the alleged infringer

12   would be materially prejudiced if the patentee were permitted to proceed with its charge

13   of infringement."  Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 605 F.3d 1305, 1310

14   (Fed. Cir. 2010); accord A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d

15   1020, 1028 (Fed. Cir. 1992) (en banc).  "Misleading 'conduct' may include specific

16   statements, action, inaction, or silence when there was an obligation to speak." Aspex

17   Eyewear, 605 F.3d at 1310.

18       Because equitable estoppel involves misleading conduct as one of its elements,

19   a defendant must plead equitable estoppel with particularity under Rule 9(b).  Bayer

20   CropScience AG v. Dow AgroSciences LLC, 2011 U.S. Dist. LEXIS 149636, at *7-8

21   (D. Del. Dec. 30, 2011); see also Barnes & Noble, Inc. v. LSI Corp., 849 F. Supp. 2d

22   925, 940 (noting that Rule 9(b)'s heightened pleading standard likely applies to an

23   equitable estoppel claim in a patent case).  Therefore, the equitable estoppel claim must

24   be pleaded in detail and provide the who, what, when, where, and how of the alleged

25   misleading conduct.  See Exergen, 575 F.3d at 1327.

26

27       [5] Cameron may proceed with its inequitable conduct counterclaim and affirmative
     defense to the extent it is based on the alleged failure to name all the proper inventors
28   of the '237 Patent subject to further challenges under the law.

1    In support of this claim, Cameron alleges that "Plaintiff Seaboard should be

2  estopped from asserting that Cameron's 'single load path' products infringe the '237

3  patent, due to its predecessor in interest Duhn Oil's '925 patent litigation position that

4  defined the invention as limited to 'dual load path.'" (Doc. No. 28 at 11 ¶ 37.)  These

5  allegations are sufficient to satisfy Rule 9(b).   Cameron alleges that Duhn Oil–the

6  "who"–represented that the '925 patent was limited to "dual load path" products–the

7  "what"–during the prior litigation–the "when" and "where"–and that this representation

8  is misleading because Seaboard is now asserting that "single load path" products

9  infringe the '237 Patent–the "how." (Id.) See also Omega Eng'g, Inc. v. Raytek Corp.,

10  334 F.3d 1314, 1333-34 (Fed. Cir. 2003) (explaining that a disclaimer made with

11  respect to a parent application can in certain circumstances apply to a continuation-in-

12  part application).[6]   In addition, Cameron alleges that it relied on Duhn Oil's

13  representations and was prejudiced by those representations because it continued to

14  market its "single load path" products in light of Duhn Oil's litigation positions.[7] (Doc.

15  No. 28 at 11 ¶ 37.)  These allegations are sufficient to plead the defense of equitable

16  estoppel.   Accordingly, the Court denies Seaboard's motion to strike Cameron's

17  equitable estoppel affirmative defense.

18  ///

19  ///

---

20

21  [6] In denying Seaboard's motion to strike this affirmative defense the Court does not decide whether the alleged statements constitute a disclaimer or whether the alleged statements would apply to the '237 Patent.  That issue will be more appropriately addressed during claim construction.

22

23  [7] Seaboard argues that Cameron's reliance allegations are insufficient because Cameron does not and cannot allege that it had knowledge of the '237 Patent because the '237 Patent issued after judgment was entered in the '925 patent litigation. (Doc. No. 38 at 8.)  See Auckerman, 960 F.2d at 1042 (explaining that a claim for equitable estoppel requires that the alleged infringer must be aware of the patentee and its patent). The '237 Patent is a continuation-in-part of the '925 Patent. (Doc. No. 1 Ex. 1 at 1:23-1:25.)  Although a continuation-in-part adds new subject matter not disclosed in the prior application, it partly continues subject matter that was already disclosed in the prior application.  See Pfizer, Inc. v. Teva Pharms. USA, Inc., 518 F.3d 1353, 1359 (Fed. Cir. 2008). Therefore, Cameron's allegations are sufficient at this stage of the litigation.

24

25

26

27

28

1:13-cv00281

1      E.      Declaration Judgment Counterclaim

2              i.      Article III Jurisdiction

3      Cameron brings a declaratory judgment counterclaim to declare U.S. Patent Nos.

4  7,322,407 ("the '407 Patent"), 7,416,020 ("the '020 Patent"), 7,493,944 ("the '944

5  Patent"), 7,520,322 ("the '322 Patent"), 7,726,393 ("the '393 Patent"), and 8,272,433

6  ("the '433 Patent") unenforceable due to inequitable conduct (collectively "the DJ

7  Patents").  (Doc. No. 28 at 22-27 ¶¶ 27-42.)  Seaboard argues that this counterclaim

8  should be dismissed for failure to satisfy Article III's case or controversy requirement.

9  (Doc. No. 38 at 13-15.)  In response, Cameron argues that a justiciable controversy

10  exists with respect to these patents based on Seaboard's continued enforcement of the

11  related '925 and '237 patents.  (Doc. No. 41 at 13-18.)

12      The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that "In a case of

13  actual controversy within its jurisdiction . . . any court of the United States . . . may

14  declare the rights and other legal relations of any interested party seeking such

15  declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

16  The phrase "case of actual controversy" in the Act refers to the type of "Cases" and

17  "Controversies" that are justiciable under Article III.  MedImmune, Inc. v. Genentech,

18  Inc., 549 U.S. 118, 127 (2007).  Federal Circuit law governs the determination of

19  subject matter jurisdiction in a patent declaratory judgment action.  MedImmune, Inc.

20  v. Centocor, Inc., 409 F.3d 1376, 1378 (Fed. Cir. 2005), overruled on other grounds,

21  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118.

22      The purpose of the Declaratory Judgment Act in patent cases is to provide the

23  allegedly infringing party relief from uncertainty and delay regarding its legal rights.

24  Micron Tech., Inc. v. Mosaid Techs., Inc., 518 F.3d 897, 902 (Fed. Cir. 2008).  An

25  actual controversy sufficient to establish subject matter jurisdiction in a declaratory

26  judgment action exists where "the facts alleged show a substantial controversy, between

27  parties having adverse legal interests, of sufficient immediacy and reality to warrant the

28  issuance of a declaratory judgment."  MedImmune, 549 U.S. at 127.  "Although there

1   is no bright line rule to determine whether a declaratory judgment action satisfies

2   Article III's case-or-controversy requirements, the dispute must be 'definite and

3   concrete, touching the legal relations of parties having adverse legal interests,' 'real and

4   substantial,' and 'admi[t] of specific relief through a decree of a conclusive character,

5   as distinguished from an opinion advising what the law would be upon a hypothetical

6   state of facts.'"   3M Co. v. Avery Dennison Corp., 673 F.3d 1372, 1376 (Fed. Cir.

7   2012) (quoting MedImmune, 549 U.S. at 127).  The Federal Circuit has further stated

8   that Article III jurisdiction exists where the patentee makes an affirmative act and "takes

9   a position that puts the declaratory judgment plaintiff in the position of either pursuing

10  arguably illegal behavior or abandoning that which he claims a right to do."  SanDisk

11  Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1381 (Fed. Cir. 2007).

12          The declaratory judgment plaintiff bears the burden of proving that there is an

13  actual controversy.  Fina Research, S.A. v. Baroid Ltd., 141 F.3d 1479, 1481 (Fed. Cir.

14  1998).  Moreover, because "once challenged, allegations alone are insufficient to meet

15  the complainant's burden to establish jurisdiction," a district court must "satisfy itself

16  that there is a factual basis for it to exercise jurisdiction."  3M, 673 F.3d at 1378 (Fed.

17  Cir. 2012) (quotations and alterations omitted).  In doing so, the district court "may

18  review evidence extrinsic to the pleadings, including affidavits and deposition

19  testimony."  Id.  Finally, even if an actual controversy exists, the exercise of jurisdiction

20  rests within the sound discretion of the district court.  Id.

21          Seaboard argues that Article III jurisdiction does not exist for Cameron's

22  counterclaim because Seaboard has never asserted the DJ Patents against Cameron or

23  demanded royalties for the patents from Cameron.  (Doc. No. 38 at 14.)  The Federal

24  Circuit has held "that related litigation involving the same technology and the same

25  parties is relevant in determining whether a justiciable declaratory judgment

26  controversy exists on other related patents."  Teva Pharm. USA, Inc. v. Novartis Pharm.

27  Corp., 482 F.3d 1330, 1344 (Fed. Cir. 2007); see, e.g., Arkema Inc. v. Honeywell Int'l,

28  706 F.3d 1351, 1357-58 (Fed. Cir. 2013) (finding a sufficient controversy existed where

1  the patentee had accused the declaratory judgment plaintiff of infringing the technology

2  in a prior litigation involving a closely related patent.).

3        In the present action, Seaboard accuses Cameron of infringing the '237 Patent.

4  (Doc. No. 1.)  In Case No. 1:05-cv-1411, Duhn Oil, the prior owner of the '925 Patent,

5  sued Cameron for infringement of the '925 Patent.  Duhn Oil Tool, Inc. v. Cooper

6  Cameron Corp., Case No. 1:05-cv-1411 (E.D. Cal. filed Nov. 9, 2005 [Doc. No. 1]).

7  Cameron alleges that the DJ Patents contain claims that are nearly identical to the

8  claims in the '925 Patent and the '237 Patent.  (Doc. No. 28 at 23 ¶ 33.)  All the

9  patents–the '925 Patent, the '237 Patent, and the DJ Patents–are part of the same patent

10 family as they are all derived from applications related to parent application No.

11 10/369,070.  (See Doc. No. 1 Ex. 1 at 1:8-1:28 (listing related applications); Doc. No.

12 28-1 Ex. D at 1:7-1:20, Ex. F at 1:8-1:27.).  All the patents are entitled "Wellhead

13 Isolation Tool[. . .]"; state that "[t]he present invention relates to wellhead equipment,

14 and to a wellhead tool for isolating wellhead equipment from the extreme pressures and

15 abrasive materials used in oil and gas well stimulation and to a method of using the

16 same;" and contain similar specifications.  (Doc. No.1 Ex. 1; Doc. No. 28-1 Exs. A-F.)

17 U.S. Patent No. 6,920,925 (filed Jul. 26, 2005).  Therefore, Seaboard and Duhn Oil's

18 assertions of the closely related '925 and '237 patents against Cameron through patent

19 infringement lawsuits are "sufficient affirmative act[s] for declaratory judgment

20 purposes" with respect to the DJ Patents.  See Arkema, 706 F.3d at 1357-58.

21 Accordingly, the Court declines to dismiss Cameron's declaratory judgment

22 counterclaim for lack of subject matter jurisdiction.

23                    ii.     Rule 9(b)

24       Seaboard argues that even if the Court has jurisdiction over Cameron's

25 declaratory judgment counterclaim, the counterclaim fails to adequately state a claim

26 for inequitable conduct.  (Doc. No. 38 at 15-19.)

27       An inequitable conduct counterclaim must be pled with "particularity" under

28 Federal Rule of Civil Procedure 9(b).  Exergen, 575 F.3d at 1326 (Fed. Cir. 2009).

1    Therefore, the counterclaim "must identify the specific who, what, when, where, and

2    how of the material misrepresentation of omission committed before the PTO." Id. at

3    1328.  In addition, the counterclaim must include sufficient allegations of underlying

4    facts from which a court may reasonably infer that a specific individual (1) knew of the

5    withheld material information or of the falsity of the material misrepresentation, and (2)

6    withheld or misrepresented this information with a specific intent to deceive the PTO.

7    Id. at 1328-29.

8         Cameron first alleges that the '407, '020, '944, '322, '393, and '433 patents are

9    unenforceable due to inequitable conduct based on the Applicants' failure to disclose

10   material information including material prior art and the existence of the '925 patent

11   litigation.   (Doc. No. 28 at 24 ¶ 34.)   These vague allegations fall well short of

12   satisfying Rule 9(b)'s heightened pleading standard. See Exergen, 575 F.3d at 1328-30.

13   The allegations do not identify "what" specific prior art or litigation information was

14   not disclosed to the PTO; "where" the material information can be found within the

15   references; "who" knew it was material and failed to disclose it; and "how" the

16   non-disclosed information was material.  Accordingly, the Court dismisses Cameron's

17   declaratory judgment counterclaim for inequitable conduct to the extent it is based on

18   the alleged non-disclosure of material information.

19        Cameron next alleges that the '020, '944, '322, and '393 patents are

20   unenforceable due to inequitable conduct based on Duhn Oil's alleged

21   misrepresentation that it qualified as a "small entity" to the PTO for fee purposes in

22   connection with the applications that issued as the '020, '944, '322, and '393 patents.

23   (Doc. No. 28 at 24 ¶ 35.)  The misrepresentation of one's status to justify small entity

24   fees can constitute inequitable conduct. See Nilssen v. Osram Sylvania, Inc., 504 F.3d

25   1223, 1231 (Fed. Cir. 2007).   But, Cameron's allegations fail to satisfy Rule 9(b)'s

26   heightened pleading standards. See Exergen, 575 F.3d at 1328-30.  Cameron does not

27   allege "how" Duhn Oil's representation to the PTO that it qualified as a "small entity"

28   was false.  In addition, Cameron does not allege the specific individual "who" knew that

1   Duhn Oil did not qualify as a small entity and made the misrepresentation to the PTO.

2   Cameron does not allege sufficient facts from which the Court could reasonably infer

3   an intent to deceive the PTO.  See Outside the Box Innovations, LLC v. Travel Caddy,

4   Inc., 695 F.3d 1285, 1294-95 (Fed. Cir. 2012) (explaining that underpayment of fees

5   does not constitute inequitable conduct without bad faith and the specific intent to

6   deceive the PTO); see, e.g., Abaxis, Inc. v. Cepheid, 2011 U.S. Dist. LEXIS 30228, at

7   *23-24 (N.D. Cal. Mar. 22, 2011) (dismissing inequitable conduct counterclaim and

8   affirmative defense based on the alleged misrepresentation of small entity status for

9   failure to state a claim).  Accordingly, the Court dismisses Cameron's declaratory

10   judgment counterclaim for inequitable conduct to the extent it is based on the alleged

11   misrepresentation of small entity status.

12       Finally, Cameron alleges that the '407 and '020 patents are unenforceable due

13   to inequitable conduct based on Duhn Oil's failure to disclose the '925 patent litigation

14   during the prosecution of the '407 Patent and its failure to disclose the '925 patent

15   litigation until five days prior to the issuance of the '020 patent.  (Doc. No. 28 at 25-27

16   ¶¶ 36-42.)  But, Cameron's allegations fail to satisfy Rule 9(b)'s heightened pleading

17   standards.  See Exergen, 575 F.3d at 1328-30.  Cameron's allegations do not identify

18   "who" failed to disclose the '925 litigation to the PTO, and the allegations also do not

19   explain "why" and "how" the existence of the '925 patent litigation is but-for material

20   to the patentability of the '407 and '020 patents.  See Therasense, 649 F.3d at 1291-92

21   (holding that absent egregious misconduct a reference must be but-for material to

22   establish inequitable conduct).   Accordingly, the Court dismisses Cameron's

23   declaratory judgment counterclaim for inequitable conduct to the extent it is based on

24   the alleged non-disclosure or delayed disclosure of the '925 patent litigation during the

25   prosecution of the '407 and '020 patents.

26   ///

27   ///

28   ///

1

## Conclusion

2      For the reasons above, the Court grants in part and denies in part Seaboard's

3  motion to dismiss counterclaims and to strike affirmative defenses.  The Court grants

4  Cameron 14 days from the date of this order to amend or cure the deficiencies–if it

5  can–in a second amended answer and counterclaims.

6      **IT IS SO ORDERED**.

7  DATED:  July 30, 2013

8

9      MARILYN L. HUFF, District Judge
       UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28